**TUCKER v. NORTON, Deputy Com'r of Unit-
ed States Employees' Compensation
Commission.**

No. 2739.

District Court, E. D. Pennsylvania.

April 4, 1944.

See also 47 F.Supp. 762.

Louis Wagner, of Philadelphia, Pa., for plaintiff.

Gerald A. Gleeson, U. S. Dist. Atty., J. Barton Rettew, Jr., Asst. U. S. Atty., both of Philadelphia, Pa., and Ward Boote, Chief Counsel, U. S. Employees' Compensation Commission, of Washington, D. C., for defendant.

KIRKPATRICK, District Judge.

This is an action for judicial review by injunction, under Sec. 21(b) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 921(b), of an award to minor grandchildren of one Fred William Dillon, who died August 9, 1941.

This Court, in an opinion filed March 31, 1943, by Judge Bard, 49 F.Supp. 483, ruled that, under the complaint, the plaintiff was entitled to a trial de novo upon the issue of jurisdiction, the disputed questions being: (1) Whether Dillon was an employee of the plaintiff Tucker, and (2) whether his death resulted from an accident occuring on navigable waters of the United States. Judge Bard also denied a motion to dismiss, but I do not understand that in so doing he intended to make any ruling on the question whether the compensation awarded was in accordance with law.

An answer was then filed, and at the hearing the only evidence offered was the record made before the Deputy Commissioner. Upon that evidence, by stipulation, I am to proceed to determine de novo the jurisdictional facts and, if jurisdiction exists, I am also to review the award.

As to the jurisdictional issue, considering the evidence de novo, I find as facts:

(1) That at the time of his injury and death the deceased was an employee of the plaintiff, Joseph Tucker.

(2) That the injury and death of the deceased occurred upon the navigable waters of the United States.

I make the conclusions of law that jurisdictional facts exist which bring the case within the valid scope of the Act.

Proceeding to a review of the award and considering the record only for the purpose of determining whether the award has any evidence to support it, I find:

(3) That there was substantial evidence to support the Deputy Commissioner's finding that the minor grandchildren were dependent upon Dillon for their support.

I make the conclusion of law that the minor grandchildren were dependent upon Dillon within the meaning of Sec. 2(14) and Sec. 9(b) of the Longshoremen's Act, 33 U.S.C.A. §§ 902(14), 909(b), and that the findings of fact of the Deputy Commissioner upon the issue of dependency are in accordance with the law.

(4) I conclude, however, that the Deputy Commissioner's finding that Dillon was not a master or member of a crew within Sec. 3(a) (1) of the Longshoremen's Act, 33 U.S.C.A. § 903(a) (1), is not supported by any evidence adduced before him and hence is not in accordance with law. On the contrary, the basic facts found by the Deputy Commissioner rightly call for the conclusion that Dillon was a member of a crew within the meaning of the Longshoremen's Act and therefore outside the scope of that Act.

In the recently decided case of Norton v. Warner Co. 64 S.Ct. 747, 748, the Supreme Court restated the principles governing judicial review of the findings of the Deputy Commissioner upon the question whether or not a bargeman is a "master or member of a crew of any vessel" (a point upon which the opinion in South Chicago Coal and Dock Company v. Bassett, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732 was not too clear). The Court, in effect, held that, in a case in which the facts relating to his duties were not in dispute, a finding upon the employe's status as a master or member of a crew was a matter of law which the Court could review and set aside if it appeared to be erroneous.

In the present case the supportable facts upon the point as found by the Deputy Commissioner, are as follows: "That on said day, and for about ten years prior thereto, the said Dillon had been employed on the barge 'Army' as a caretaker of said barge; that it was the duty of Dillon to pump water out of the barge on occasions when excessive leakage occurred, to attend to and to supervise the loading and unloading thereof, to fasten and unfasten lines as necessary and at all times to protect the barge from damage and otherwise safeguard the interest of its owner; that his duties were limited to the barge 'Army'; that he was the only person employed thereon; that he lived, ate and slept on the barge,

and bought his own meals; that at the time of his death he was paid wages * * * at the rate of $25.00 per week; that he was furnished with living quarters on the vessel, * * * that he was not a qualified or licensed seaman and held no seaman's papers; that at the time of such death the said barge * * * operated for the said Joseph P. Tucker by said Dillon; that said barge had no motive power of its own and was towed by tug boats; that its operations were confined principally to the Philadelphia harbor." The Deputy Commissioner made the additional finding: "That the duties performed by the deceased employee prior to his death did not relate principally to the navigation of the said barge, but on the contrary his duties had substantially no relation to navigation, being principally the duties incident to common labor and custodial service." This finding, however, being derived from basic facts relating to Dillon's employment was in substance no more than a finding that he was not a member of a crew and equally reviewable.

Dillon's duties, as so found, fall somewhere between those of the bargemen in South Chicago Coal Co. v. Bassett, supra, and in Warner Co. v. Norton, supra.

In the Bassett case, the bargeman was on the lighter primarily for the purpose of helping unload it by standing beside the coal chute with a stick and removing obstructions as the coal flowed out. He slept at home and had practically no duties which could possibly be called navigational. The lighter had its own motive power, and its crew included a licensed master and licensed chief engineer, a fireman, and three other employees. What complicated the case was that the bargeman had to be a "seaman" in order to give the lighter the full complement required by its certificate of inspection.

The facts of the case now before the Court come closer to those of the Warner case. There are certain distinctions but I do not think that they are controlling. In the Warner case the barge, although it had no motive power, could be propelled short distances by winding up a mooring or towing cable by means of a hand-operated capstan. This the claimant in that case sometimes did, and he also responded in some unspecified manner to orders and signals from the tug boat captain when the barge was in tow. The barge in the present case does not appear to have been so equipped, but that means merely that the field within which the character of Dillon's

duties must be determined is that much narrower. Also, in the Warner case, the bargeman had no duties in connection with the handling of cargo. In the case now before the Court the bargeman did have the duty of supervising the loading and unloading of the barge. That supervision however related to the vessel rather than its cargo, because it was for the purpose of making sure that the work was done in such manner that the barge would not be subjected to excessive strain or unequal loads and so capsize or be strained, bruised or otherwise injured.

Dillon's primary duty had to do with safeguarding the vessel, keeping it from sinking or from being injured and maintaining it in a seaworthy condition. These duties in the Warner case were held to be navigational, and I think that even though Dillon's duties, otherwise the same, included supervision of loading and unloading, there were also navigational. Certainly they were more so than standing by and facilitating with a stick the flow of coal being unloaded, as in the Bassett case.

Under the findings of the Deputy Commissioner no conclusion can be drawn except that Dillon was primarily on board for the navigation of the barge, "navigation" being understood in the only way to which it can be applied to that vessel.

Decree may be entered in accordance with the prayer of the complainant.