Ethel Maule THOMPSON
and
Virginia Maule Herring, Executrices of the Estate of Mary H. Maule

v.

UNITED STATES of America.

No. 15247.

United States District Court
E. D. Pennsylvania.

Feb. 14, 1957.

MacCoy, Evans & Lewis, Morse Garwood and Homer H. Hewitt, Jr., Philadelphia, Pa., for plaintiffs.

W. Wilson White, U. S. Atty., and Alan J. Swotes, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

VAN. DUSEN, District Judge. . .

The trial judge makes the following Findings of Fact and Conclusions of Law:

## I. Findings of Fact.

1. This suit was instituted on May 13, 1953 by plaintiffs for a refund of federal estate tax assessed and collected.

2. The Collector of Internal Revenue for the First District of Pennsylvania, Francis R. Smith, to whom the payments hereinafter referred to were made, retired from office on November 11, 1952.

3. Joseph B. Myers died on July 27, 1875, and under his will "certain estates and property" (see Exhibits B and C)[1] were left to his niece, Hannah Ann Hieskell, the decedent's mother, in trust for her life with a power of appointment by will.

4. Hannah Ann Hieskell died on July 17, 1884, leaving a will exercising the power, whereby she created a trust to pay the net income thereof to her two children, Colson Hieskell, Jr. and Mary H. Maule, the decedent, for life, and at the decease of each, "the capital of one-half of the estate hereby willed shall go to his or her children living at his or her death, and the issue of any of his or her children who may be then dead, leaving issue, in equal shares," (see Exhibit B); with a cross-remainder in case either died without issue. She further provided that each of her children should have the right to appoint by will, or writing in the nature thereof, the whole or any part of his or her share. Colson Hieskell, Jr., the decedent's brother, died May 21, 1922, intestate and without issue.

5. Mary H. Maule, the deceased, a resident of Pennsylvania, died testate on November 20, 1947. She died a widow and survived by only two children, Ethel Maule Thompson and Vir-

---

1. Unless otherwise stated, all exhibits referred to in these Findings are attached to the Statement of Claim and were received in evidence at the trial by oral stipulation of counsel (N.T. 15–6).

ginia Maule Herring, and no issue of deceased children.

6. On July 16, 1946, the decedent executed her will (Exhibit A). The fifth clause thereof reads as follows:

"Fifth: All the rest, residue and remainder of my estate, real, personal and mixed, of whatsoever kind or description and wheresoever situate, and whether vested or in trust subject in any wise to my power of disposition, limitation and appointment, I give, devise and bequeath as follows: One-half thereof to my daughter, Ethel Maule Thompson, absolutely, and the other one-half thereof to my daughter, Virginia Maule Herring, absolutely."

7. The plaintiffs were regularly appointed executrices of the estate of the said Mary H. Maule, deceased, by the Register of Wills of Montgomery County, Pennsylvania, on November 24, 1947, and are still acting as such. Plaintiffs reside in Haverford, Pennsylvania.

8. The decedent died possessed of property having a value of $205,553.05 (see Exhibit P–1).[2]

9. The entire individual estate of Mary H. Maule passed to the specific and pecuniary legatees named in paragraphs Second to Fourth, inclusive, of her will, and no part of such estate passed to the residuary legatees named in paragraph Fifth of that will.

10. The property over which decedent had a power of appointment had a value of $54,213.07, according to plaintiffs' refund claim (see Exhibit D).

11. In an adjudication dated April 6, 1948, the Orphans' Court of Philadelphia County, Pennsylvania,[3] ruled that the residuary clause in decedent's will was "an ineffectual appointment" of the power of appointment given to her under the will of Hannah Ann Hieskell, "since she gives the residue to her two daughters in equal shares, and they are the same persons who take the same shares under the will of Hannah Ann Hieskell in default of appointment." (see Exhibit C and Exhibit D–1 [4]).

12. Plaintiffs timely filed on May 8, 1948, with the Collector of Internal Revenue for the First District of Pennsylvania a federal estate tax return for their decedent's estate (see P–1).

13. The examining officer, in his report dated November 8, 1948, included the property described in paragraph 10 above in decedent's gross estate for the purpose of computing the estate tax (Exhibit D).

14. On February 17, 1949, plaintiffs paid to the said Collector the tax shown to be due on the examining officer's report, $44,163.33 (Exhibit D).

15. On December 11, 1950, plaintiffs filed with the Collector of Internal Revenue for the First District of Pennsylvania a claim for refund of federal estate tax in the sum of $15,029.46, plus such additional amount as may be legally refundable (Exhibit D).

16. On June 20, 1951, the Commissioner of Internal Revenue gave notice to the plaintiffs, by registered mail, that the said claim for refund had been disallowed in its entirety.

II. Conclusions of Law.

1. The court has jurisdiction over the parties and the subject matter (see 28 U.S.C.A. § 1346(a) (1)).

2. At the time of her death, Mary H. Maule had a general testamentary power of appointment over the trust fund established by the will of Hannah Ann Hieskell.

3. The will of the decedent is valid under the Pennsylvania Wills Act of 1947, P.L. 89, § 1 ff., 20 P.S. § 180.1 ff.

2. This was received in evidence at the trial but not attached to the complaint (N.T. 16–7).

3. This court had jurisdiction over this trust arising from property passing originally under the will of Joseph B. Myers, deceased.

4. See footnote 2 above.

4. The general devise in the decedent's will of property in trust subject to her power of appointment is an exercise of the power of appointment, mentioned in paragraph 2 above, under the terms of Section 811(f) of the Internal Revenue Code of 1939, as amended, 26 U.S.C. § 811(f).[5]

5. The adjudication of the Orphans' Court that the residuary clause of decedent's will was "an ineffectual appointment" was a ruling as to the passing of title to the property subject to the power and did not pass on the question as to whether the power of appointment had been ineffectively exercised.

■ 6. Section 811(f) of the Internal Revenue Code of 1939, as amended by the Powers of Appointment Act of 1951, requires that, as to powers of appointment created before October 21, 1942, there must be possession of a general power of appointment at the time of the decedent's death and an exercise of the power in order for there to be inclusion of the appointive property in decedent's gross estate.

7. Congress intended, with respect to the powers created prior to October 1942, to include appointive property within a decedent's gross estate under Section 811(f) upon the exercise of the power, irrespective of whether there was a passing of title by virtue of such exercise. Congress did not intend that the exercise must be "effective."

■ 8. The residuary clause of decedent's will "exercised" the power of appointment given to her by the will of Hannah Ann Hieskell and made the appointive property includible in the decedent's gross estate under Chapter 3 of the Internal Revenue Code of 1939, as amended.

9. The application of Section 811(f) to the property held in the trust referred to in paragraph 2 above is not a violation of any provisions of the United States Constitution.

The requests for Findings of Fact and Conclusions of Law of the plaintiffs are denied insofar as they are inconsistent with the foregoing.

### Discussion.

A similar fact situation to that here involved was recently considered in Keating v. Mayer, 3 Cir., 1956, 236 F.2d 478, 480, and that decision controls this case.

There the plaintiffs-appellants, executors of decedent's estate, argued that the decedent's will was not an "exercise", nor was it an "effective" exercise, of the general power of appointment by will that decedent had at the time of her death. In an exhaustive opinion, completely analyzing the authorities and Section 811(f) of the 1939 Code, as amended by the Internal Revenue Act of 1942, § 403, and further amended by the Powers of Appointment Act of 1951, § 811(f) (1), the Third Circuit found that a mere "exercise," whether effective or not, was sufficient to make the appointive property includible in the decedent's estate.

As the dispositive portion of the will of the deceased in the Keating case refrained entirely from referring to the

---

5. Section 811(f) contained language on November 20, 1947 (date of decedent's death) taxing property "with respect to which the decedent has at the time of his death a general power of appointment," which language would clearly make the property held in this trust taxable. The Powers of Appointment Act of 1951, 65 Stat. 91, substituted for this language, as to powers created before October 21, 1942, the following:
" * * * with respect to which a general power of appointment created on or

before October 21, 1942, is exercised by the decedent (1) by will * * *."
Subsection (c) of the Powers of Appointment Act of 1951 provides as follows:
"(c) Effective Date.—The amendments made by this section shall be effective as if made by section 403 of the Revenue Act of 1942 on the date of its enactment (applicable with respect to estates of decedents dying after October 21, 1942)."

power of appointment,[6] the finding of that court is clearly applicable to this case. There only an implied ineffective exercise of the power was involved, whereas here the residuary clause of decedent's will made direct reference to the exercise of the power and there was an express ineffective exercise of the power.

■ Plaintiff raises constitutional objections to the application of Section 811 (f) to this case, which objections were not discussed in the Keating opinion. The contention that the tax here imposed would be a taking without due process, and so in violation of the Fifth Amendment, was before the Court of Appeals for the Third Circuit in the Keating case, supra (see page 31 of appellants' brief), and, hence, there is no need to review this contention which must have been considered and rejected by the appellate court in that case.[7]

■ Further, the imposition of the tax on the property upon which decedent held a general power of appointment was not a direct tax on property in contravention of Article I, § 2, Clause 3, and Article I, § 9, Clause 4, of the Constitution.

A tax on the "exercise" of the power of appointment by the decedent in his will is not a tax imposed on property or the income therefrom only by reason of its ownership. Rather, it was levied upon the happening of the event, namely, the "exercise" of such power by the fifth clause of the will of the decedent. It is a recognition of the economic effect of the use of a power of appointment, since by such use this decedent had the opportunity to control the transfer of the property even though such use was ineffective in this case. See Whitney v. State Tax Commission, 1940, 309 U.S. 530, 539, 60 S.Ct. 635, 84 L.Ed. 909; see, also, Fernandez v. Wiener, 1945, 326 U.S. 340, 352–353, 66 S.Ct. 178, 90 L.Ed. 116, where it was stated that Congress may tax the exercise, non-exercise, or relinquishment of a power of disposition of property.

■■ Finally, a trial court should be slow to deny constitutionality to an Act of Congress unless its conflict with the constitutional provision is clear. Such duty belongs peculiarly to appellate courts. Bromley v. McCaughn, D.C.E.D. Pa.1928, 26 F.2d 380, affirmed per curiam 3 Cir., 1929, 36 F.2d 1019; In re Collier, D.C.E.D.Pa.1934, 8 F.Supp. 447, 449; Mather v. MacLaughlin, D.C.E.D.Pa. 1932, 57 F.2d 223, 225; and United States v. Smith, D.C.W.D.Mich.1945, 62 F.Supp. 594.[8]

The parties are granted leave to file, within thirty days, an additional stipulation or additional evidence concerning the costs, including attorney's fee, covered by the refund claim and the complaint in accordance with the procedure

---

6. The dispositive portion of the will of the deceased in the Keating case, supra, read:

"'1. I leave all my property to my sons who shall survive me, their heirs and assigns forever.'"

7. See Bingham v. United States, 1935, 296 U.S. 211, 219, 56 S.Ct. 180, 80 L.Ed. 160, where the Supreme Court refused to reconsider issues that had previously been before the court in their determination of a similar problem. Cf. Sunbeam Corp. v. Wentling, 3 Cir., 1950, 185 F.2d 903, 905, and Gardella v. Chandler, 2 Cir., 1949, 172 F.2d 402, 405.

Further, the District Court is bound to follow the rulings of the Circuit Court of Appeals in which the District Court is located. Mobley v. J. A. Fischer Co.,

D.C.E.D.Pa.1930, 49 F.2d 920, 922, and United States v. Rollnick, D.C.M.D.Pa. 1940, 33 F.Supp. 863, 866. Cf. Tucker v. Norton, D.C.E.D.Pa.1943, 49 F.Supp. 485; United States ex rel. Trinler v. Carusi, 3 Cir., 1948, 168 F.2d 1014; and Kowalski v. Chandler, 6 Cir., 1953, 202 F.2d 413.

8. The burden of establishing the unconstitutionality of a statute rests on him who assails it, and doubt as to the constitutionality of an act should always be resolved in its favor. See Bessemer Inv. Co. v. City of Chester, D.C.E.D.Pa.1938, 22 F.Supp. 311, 315; Metropolitan Cas. Ins. Co. v. Brownell, 1935, 294 U.S. 580, 584, 55 S.Ct. 538, 79 L.Ed. 1070; and United States v. Smith, supra.

agreed to at the trial (see N.T. 11–12). Thereafter, defendant shall submit an order for entry of judgment in accordance with the foregoing Findings of Fact, Conclusions of Law, and Discussion within 45 days from this date.